HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PRIME GROUP, INC., a Washington corporation,

    Plaintiff,

v.

DONALD DIXON, an individual,

    Defendant.

Case No. 2:21-cv-00016-RAJ

ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

## I. INTRODUCTION

This matter comes before the Court on Plaintiff Prime Group, Inc.'s ("Plaintiff" or "Prime") motion for preliminary injunction. Dkt. # 6. Having considered the briefing, relevant law, and the record, the Court finds that oral argument is unnecessary. For the reasons below, the Court **DENIES** the motion.

## II. BACKGROUND

Prime is an electrical contractor based in Bellevue, Washington. Dkt. # 6 at 2. It has historically done most of its work in six counties—three in Washington (King County, Pierce County, and Snohomish County) and three in California (Alameda

ORDER – 1

County, Santa Clara County, and San Mateo County) (collectively the "Six Counties")—and it is expanding into other areas. *Id.* On February 24, 2016, Prime acquired a company called AMS and issued shares of its company to certain AMS employees as part of the transaction. *Id.* at 4. Defendant was among these employees who signed the Joinder and First Amendment to Shareholders Agreement, under which he agreed to be bound by the Shareholders Agreement ("Agreement"). *Id.* The Agreement contained several restrictive covenants, including a noncompete, a non-solicitation of customers or suppliers, and a no-hiring covenant. *Id.* The noncompete states the following:

> 15.1. **Covenant Not to Compete**. Each Shareholder agrees that during such time as such Shareholder holds any Shares and for a period of three (3) years after such date, or if longer, one (1) year following an Employment Termination with respect to such Shareholder (the "***Restricted Period***"), the Shareholder will not, directly or indirectly, enter into the employment of, render services to, or acquire any interest whatsoever… in any business, trade or occupation similar to or in competition with the business of the Company or its Affiliates within the State of Washington or any other states where the Company or its Affiliates conduct business operations, except where such activities are for or on behalf of the Company or its Affiliates.

Dkt. # 1-1 at 12. The non-solicitation covenant states the following:

> 15.2. **Nonsolicitation of Customers or Suppliers.** Each Shareholder agrees that during the Restricted Period, such Shareholder shall not call upon or solicit, either for the Shareholder or any other person or firm other than the Company or its Affiliates any of the customers or suppliers of the Company or its Affiliates for the purpose of the sale, service or distribution of any of the products or services offered by the Company or its Affiliates.

*Id.* The no-hiring covenant contained in the agreement proscribes the following:

> 15.3 **No Hiring Covenant**. During the Restricted Period, each Shareholder shall not, directly or indirectly, take any action to hire or assist in hiring any employee of the Company or its Affiliates, for the Shareholder's benefit or the benefit of any other Person, including without limitation: (1) identifying to any subsequent employer of Shareholder or such employer's agents or any other Person or Persons who have special knowledge concerning inventions, processes, methods or confidential affairs of the Company or its Affiliates, (2) commenting to any

ORDER – 2

subsequent employer of Shareholder or such employer's agents, or any such other Person, about the quantity or quality of work, special knowledge or personal characteristics of any Person who is still employed by the Company or its Affiliates, and (3) providing such information to a prospective employer during interviews preceding possible employment.

*Id.* at 12-13. The agreement also contained a confidentiality provision:

16.1 **In General**. Each Shareholder agrees that such Shareholder will not, either for profit or otherwise, both during and after the term of this Agreement, disclose any Confidential Information of the Company or its Affiliates to any person, firm, corporation or other entity, or make use of such Confidential Information, directly or indirectly, for the benefit of such Shareholder or for the benefit of any firm, corporation or entity other than the Company or its Affiliates.

*Id.* at 13. The Agreement is governed under the laws of Washington. *Id.* at 18.

At the time of the acquisition, Defendant was promoted to the role of Group Executive and was invited to join the Ownership Group, which provided "unrestricted access to Prime's trade secrets, proprietary knowledge, and customer information." *Id.* at 5. As an executive-level manager in Prime's San Jose, California office, Defendant "had full control and oversight of all personnel, field operations, estimating, bidding, contract negotiation, personnel hiring and management, and field operations." Dkt. # 10 ¶ 5. As a shareholder, Defendant would attend Prime's annual shareholders meetings. *Id.* ¶ 8. The last shareholder meeting that Defendant attended was on October 9, 2020, which was six weeks prior to his termination date. *Id.*

During his employment with Prime, Defendant managed the company's data center. *Id.* at 7. Prime created the data center in 2018 and hired Ms. Aimee Bowers to lead it. *Id.* The data center group was staffed over the course of 12 to 18 months. *Id.* The group's work involved "researching markets and opportunities, contacting and soliciting potential customers, and devising cost models." *Id.* Prime allocated $1,050,000 for Defendant's data center subgroup in 2019. *Id.* Prime claims that the data

ORDER – 3

center group was on track to generate $8.8 million in revenue and $625,000 in profit in 2020. *Id.*

Between October 15, 2020 and November 4, 2020—a period of twenty days—five Prime employees who worked directly for Defendant in the data center subgroup terminated their employment and began to work for Sprig, a direct competitor, shortly thereafter. *Id.* at 10. Sprig is a company based in the Bay Area of California whose "industry segments are nearly identical to Prime's within the region." *Id.* According to Defendant, four of the employees who left to work for Sprig comprised Defendant's entire data center group and their departure "devastated Prime's start-up data center group." *Id.* Prime alleges that it learned that Defendant had been in talks with Sprig to leave his position with Prime and begin a new role at Sprig as part of its new data center group. *Id.* at 10. On October 29, 2020, Defendant told Prime that he did not intend to adhere to the restrictive covenants in his agreement. *Id.*

On November 20, 2020, Prime terminated Defendant for cause and informed him that accepting employment with Sprig would violate the noncompete covenant of the shareholder agreement. *Id.* at 10-11. On December 1, 2020, Defendant informed Prime, through counsel, of his belief that the noncompete was unenforceable. *Id.* at 11. Defendant's counsel also denied the Defendant was responsible for Sprig hiring the entire data center team at Prime. Dkt. # 9 ¶ 3. He represented that Defendant would not work for a company with an office based in the Six Counties. *Id.*

On December 9, 2020, Prime's counsel responded to Defendant's counsel, stating that Prime intended to enforce the noncompete covenant with respect to employers with offices based in the Six Counties or employers that bid on work in the Six Counties. *Id.* ¶ 4. Prime's counsel provided a list of employers for whom Defendant could not work, including Sprig, as well as a list of employers for whom Defendant could work without objection from Prime. *Id.*

ORDER – 4

On December 14, 2020, Defendant's counsel responded, indicating that Defendant had accepted a job offer with Sprig as a Group Executive. *Id.* ¶ 5; Dkt. # 9 at 5. On January 8, Defendant's counsel provided Prime with the offer letter from Sprig, which restricted Defendant from working on any projects in the Six Counties and barred him from soliciting or assisting in hiring any current employee of Prime. Dkt. # 6 at 11-12. Sprig's offer letter also instructed Defendant to "abide by the confidential and/or proprietary material of former employers." Dkt. # 9 at 6. Specifically, the offer letter required Defendant to return, destroy, and not retain the following:

> written or electronic information from Prime concerning any aspect of its business operations . . . including without limitation, any and all trade secrets and other propriety information including Prime's data center business model and pricing information, Prime's plans for expanding its business in Washington and California (if any), and the identifies of Prime's customers and prospective customers in Washington and California.

Dkt. # 9 at 6.

Defendant's start date was February 17, 2021. *Id.* On January 19, 2021, Prime filed this motion for preliminary injunction. Dkt. # 6.

### III. LEGAL STANDARD

Preliminary injunctions are "an extraordinary remedy never awarded as of right." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). A Plaintiff seeking a preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The first *Winter* factor of likely success on the merits is the most important. 786 F.3d at 740. To obtain injunctive relief, "plaintiffs must establish that irreparable harm is *likely,* not just possible, in order to obtain a preliminary injunction." *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1131 (9th Cir.2011).

ORDER – 5

## III. DISCUSSION

Prime alleges that Defendant has breached his noncompete covenant by accepting employment with Sprig, as well as his no-hiring covenant by assisting Sprig in hiring Prime's employees. Dkt. 1-1 ¶¶ 3.1, 3.4. Prime asserts that its noncompete covenant is enforceable under Washington law because Defendant received independent consideration in the form of shares in exchange for signing the noncompete and the scope of the geographic and temporal restrictions of the covenant are reasonable for the protection of Prime's legitimate business interests. *Id.* ¶ 3.3. Prime alleges it will suffer immediate, long-term, and irreparable loss and damage through Defendant's employment with Sprig as well as his continued efforts to assist Sprig or other entities in hiring Prime's employees. *Id.* ¶¶ 3.2, 3.5. The Court now considers whether Prime has satisfied the *Winter* factors to warrant a preliminary injunction with respect to Defendant's employment with Sprig.

### A. Likelihood of Success on the Merits

Washington law generally affords "broad protection to tangible and intangible business interests and goodwill." *Amazon.com, Inc. v. Moyer*, 417 F. Supp. 3d 1388, 1396 (W.D. Wash. 2019). Restrictive covenants, however, "cannot be more restrictive than is reasonably necessary to protect the legitimate business interests of employers." *Labriola v. Pollard Grp., Inc.*, 100 P.3d 791, 800 (Wash. 2004). Indeed, to be enforceable, noncompete covenants must be "reasonable and lawful." *Emerick v. Cardiac Study Ctr., Inc., P.S.*, 357 P.3d 696, 701 (Wash. 2015). In deciding whether a noncompete covenant is reasonable, a court must consider the following three factors:

> (1) whether restraint is necessary for the protection of the business or goodwill of the employer, (2) whether it imposes upon the employee any greater restraint than is reasonably necessary to secure the employer's business or goodwill, and (3) whether the degree of injury to the public is such loss of the service and skill of the employee as to warrant nonenforcement of the covenant.

*Perry v. Moran*, 748 P.2d 224, 228 (Wash. 1987).

ORDER – 6

A court determines the reasonableness of a noncompete covenant by evaluating its geographic and temporal restrictions. *Emerick v. Cardiac Study Ctr., Inc., P.S.*, 357 P.3d 696, 703 (Wash. 2015). Under Washington law, a court "must presume that any noncompetition covenant with a duration exceeding eighteen months after termination of employment is unreasonable and unenforceable." RCW 49.62.020(2). However, a party seeking to enforce the noncompete covenant "may rebut the presumption by proving by clear and convincing evidence that a duration longer than eighteen months is necessary to protect the party's business or goodwill." *Id.*

The noncompete at issue here precludes Defendant, for a period of three years, from "directly or indirectly, enter[ing] into the employment of, render[ing] services to, or acquir[ing] any interest whatsoever . . . in any business, trade or occupation similar to or in competition with the business of the Company or its Affiliates within the State of Washington or any other states where the Company or its Affiliates conduct business operations." Dkt. # 1-1 at 12. Prime argues that the three-year duration of the noncompete is reasonable based on Defendant's former position as a shareholder with Prime, which gave him "unlimited access to Prime's trade secrets and strategic plan for the foreseeable future." Dkt. # 6 at 18. Prime claims that 18 months is insufficient to preclude Defendant from using his knowledge to harm Prime's business. *Id.* Prime also argues that the geographic restriction of Washington and California is warranted because Prime has a significant presence in the states and has plans to expand in both states. Dkt. # 6 at 19.

Beyond such general speculations about harm, Prime does not provide "clear and convincing evidence that a duration longer than 18 months is necessary to protect the party's business or good will." *Id.* at 20 (citing RCW 49.62.020(2)). Indeed, three years is a long time to restrict employment under a noncompete; it is per se "unreasonable" in Washington. Although Defendant's position as a shareholder gave him access to Prime's strategic plans, Prime does not explain why 18 months is unreasonable and three years is

ORDER – 7

the minimum time period necessary to protect its business interests. Nor does Prime identify any trade secrets to which Defendant had access that could require such an extended employment restriction. The only sensitive information Prime identifies involves Prime's "strategic plan" which involves possible acquisitions and expansion. Yet Prime fails to explain why knowledge of its potential acquisitions requires a three-year bar on employment in the industry. In the absence of clear and convincing evidence supporting such an extended restriction, Prime fails to sufficiently rebut the presumption of unreasonableness.

For the purposes of preliminary injunction, the Court also finds that a blanket restriction on working "in any business, trade or occupation similar to or in competition with" Prime anywhere in California or Washington is geographically overbroad and unreasonable. Dkt. # 1-1 at 12. Washington law does not permit such sweeping restrictions on individuals' ability to work that are not *reasonably* necessary to protect the employer's legitimate business interests. *See Labriola*, 100 P.3d at 800. Such a restriction would be a general ban on competition, not "a reasonable restriction on unfair competition." *Amazon.com, Inc. v. Moyer*, 417 F. Supp. 3d 1388, 1398 (W.D. Wash. 2019). Indeed, the majority of Prime's work was limited to the Six Counties while Defendant was employed by Prime. Dkt. # 6 at 2. Although Prime claims it has plans to expand beyond the Six Counties, such plans for future expansion cannot dictate the geographic restrictions of a former employee's future employment, particularly when the employee had not conducted work or actively engaged clients in such areas. Such restrictions are overreaching and unreasonable.

In its motion, however, Prime requests to enjoin Defendant from working only for Sprig. Dkt. # 20 at 6. Because Washington law permits a court to reform a noncompete covenant "to a more limited—and reasonable—scope," the Court may consider such a limited injunction. *Amazon.com, Inc. v. Moyer*, 417 F. Supp. 3d 1388, 1399 (W.D. Wash. 2019). The Court first notes that Sprig has already set forth several restrictions on

ORDER – 8

Defendant's employment to limit unfair competition with Prime. Dkt. # 13 at 14. Sprig's proposed employment contract with Defendant bans him from working on any projects in the Six Counties where Prime conducts most of its business. *Id.* at 5. Sprig also conditioned Defendant's employment on non-solicitation of Prime's employees. *Id.* The Court also notes that Defendant is still subject to his confidentiality agreement with Prime and has agreed to Sprig's requirement that he not retain any of Prime's trade secrets and propriety information, including the identities of Prime's customers and prospective customers in Washington and California. The Court finds these restrictions sufficient to protect the business interests of Prime by precluding Defendant from working in areas were the vast majority of Prime's clients are based, prohibiting Defendant from hiring any of Prime's employees, and barring Defendant from disclosing Prime's confidential information. Finding the noncompete covenant to be unreasonable and a reform to be unnecessary at this time, the Court finds that Prime has not demonstrated a likelihood of success on the merits.

**B. Likelihood of Irreparable Harm**

"Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages." *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014). Financial damages alone are not sufficient to support preliminary injunctive relief. *hiQ Labs, Inc. v. LinkedIn Corp.*, 938 F.3d 985, 993 (9th Cir. 2019) (noting that "monetary injury is not normally considered irreparable"); *see also Goldie's Bookstore, Inc. v. Superior Court of the State of Cal.*, 739 F.2d 466, 471 (9th Cir. 1984) (holding that "[m]ere financial injury . . . will not constitute irreparable harm if adequate compensatory relief will be available in the course of litigation"). "[S]peculative injury does not constitute irreparable injury." *Colorado River Indian Tribes v. Parker*, 776 F.2d 846, 849 (9th Cir. 1985). Instead, a plaintiff must demonstrate it is "under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly

ORDER – 9

traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1171 (9th Cir. 2011) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488 (2009)).

Prime alleges that Defendant's employment with Sprig will "cause significant damage to Prime and its business." Dkt. # 6 at 12. Specifically, Prime claims that because Defendant "had access to an extensive amount of Prime's confidential information and Prime's trade secrets . . . he can share or use this information with Sprig." *Id.* Prime alleges that Defendant also has information about Prime's customers and pricing strategy, which would enable him to help Sprig "steal existing and potential customers away from Prime." *Id.* Prime claims that Defendant can use his knowledge about Prime's plans for expansion in Washington, Oregon, and California to help Sprig expand to those areas first. *Id.* Prime alleges that if Defendant shared with Sprig any information regarding an active acquisition discussed at the October 2020 shareholder meeting, it could cause irreparable damage in the form of millions of dollars of lost revenue. *Id.* Prime further argues that if Defendant "is allowed to continue helping Sprig raid employees from Prime, it is hard to imagine the extent of the damage Dixon could cause to Prime." *Id.* at 14.

The Court finds that Primes allegations of irreparable harm are speculative and insufficient to establish a *likelihood* of irreparable harm. First, the Court finds that much of the harm in the complaint has already occurred with Prime's loss of its data center team—for which adequate compensatory relief for such harm would be available in the course of litigation. *See* 739 F.2d at 471. The parties' dispute over the cause of Prime's data center's failure is irrelevant for purposes of this preliminary injunction and will not be addressed here. As far as Prime's concern of future poaching of Prime employees, the Court does not find any support for more than a possibility of such injury.

ORDER – 10

Next, Prime's allegations of the likelihood of irreparable harm resulting from Defendant's possible disclosure of Prime's confidential information, trade secrets, or strategic plan are unavailing. Dkt. # 6 at 12-13. Prime does not identify any trade secrets whose disclosure could cause irreparable harm. Nor does Prime allege sufficient facts with respect to the threat of disclosure of Prime's "confidential information." And, as this Court has held with respect to a similar claim, concerns regarding any other "confidential information" that Defendant may have had access to are "fatally unspecific." *See Amazon.com, Inc. v. Powers*, No. C12-1911RAJ, 2012 WL 6726538, at *11 (W.D. Wash. Dec. 27, 2012). Prime does contend that Defendant's disclosure of its "strategic plans," which include information about acquisitions, could provide an unfair advantage for Sprig. However, Defendant was not involved in acquisitions at Prime, rendering this information tangential to his role and responsibilities and raising questions as to how much information Defendant recalls.[1] Dkt. # 13 at 7. Moreover, as noted above, Defendant is still subject to the confidentiality provision in his agreement with Prime. He is also barred from working on projects in the counties in which Prime has most of its projects, further minimizing the risk of harm. The potential harm related to disclosure of pricing strategies is also somewhat limited by the process for engaging clients in the industry, which typically involves requests for proposals by general contractors for electrical contractors to bid for projects. *Id.* at 14.

Prime contends that "[t]he potential to lose customers, employees, goodwill, and revenue certainly supports a finding of the possibility[2] of irreparable harm," in reliance

---

[1] Defendant alleges that he only recalls that Plaintiff was looking to acquire two first but he does not recall their identities or any other details beyond general location. Dkt. # 13 at 6-7.

[2] The Court notes that this quote regarding the "possibility" of harm was from a pre-*Winter* case. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001). The current standard for preliminary injunction requires a showing "that irreparable injury is *likely* in the absence of an injunction," not merely that it is a possibility. *Winter*, 555 U.S. 7 at 22 (emphasis original).

ORDER – 11

on this district's holding in *A Place for Mom v. Perkins*, 475 F. Supp. 3d 1217, 1231 (W.D. Wash. 2020). Dkt. # 6 at 20. However, the facts in *Perkins* are distinguishable from those here. The defendant in *Perkins* had "contacted twenty or more of [p]laintiff's referral sources since ending her employment." 475 F. Supp. 3d at 1224. The defendant's solicitation of patients for her new employer using her former employer's referral sources, which she maintained in her possession after her termination, had already resulted in the loss of a referral source. *Id.* at 1231. This constituted clear evidence of harm and established a likelihood of future harm. *Id.* In addition, the case cited in *Perkins* similarly relies on *evidence* to establish this type of irreparable harm, not mere speculation of such harm. *See Navigant Consulting, Inc. v. Milliman, Inc.*, No. C18-1154JLR, 2018 WL 3751983, at *4 (W.D. Wash. Aug. 8, 2018) (holding that "[t]he potential to lose customers, employees, goodwill and revenue" constitutes irreparable harm based on a finding that the plaintiff "already lost two high-performing employees").

Here, Prime provides no evidence establishing a likelihood of irreparable harm that may be cured by injunctive relief. Prime asserts that it Defendant had been in possession of Prime's documents related to Prime that were turned over to his attorneys; Defendant already breached the agreement by helping Sprig hire Prime's employees; and Prime will continue to lose business due to the departure of the data center team. Dkt. # 20 at 7. These allegations are inadequate to support a finding of irreparable harm. First, Prime offers no evidence of any business threat contained in the documents that would imply a risk—much less a likelihood—of irreparable harm. *See* Dkt. # 14 ¶ 8. Second, Defendant's alleged breach of his agreement does not in and of itself establish a risk of future harm to Prime. Finally, although the departure of Prime's data center team certainly harmed Prime, the requested injunctive relief cannot remedy this loss. Prime's data center team employees who left to work for Sprig were not bound by any covenants not to compete, and injunctive relief cannot preclude them from continuing their work.

ORDER – 12

Prime has thus failed to demonstrate a likelihood of irreparable harm requiring immediate injunctive relief. The Court finds that any harm sustained Prime could be fully compensated by subsequent money damages and is therefore not irreparable. A failure to establish one of the *Winter* prongs is fatal to a motion for temporary injunctive relief. *A Woman's Friend Pregnancy Res. Clinic v. Becerra*, 901 F.3d 1166, 1167 (9th Cir. 2018) (holding that a "plaintiff [must] make a showing on *all four prongs* to obtain a preliminary injunction"). Having determined that Prime has not established the first two *Winter* prongs, the Court need not consider the other *Winter* prongs to conclude that Prime has failed to meet its burden to obtain relief through a preliminary injunction.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for preliminary injunction is **DENIED**. Dkt. # 6. Defendant's Motion for Leave to File Supplemental Declarations in Opposition to Plaintiff's Motion for Preliminary Injunction is **DENIED** as moot. Dkt. # 25.

DATED this 28th day of April, 2021.

The Honorable Richard A. Jones
United States District Judge

ORDER – 13